1797.

If no more than one was concerned, all muft be acquitted.

The jury found a verdict—not guilty.

---

Leffee of WILLIAM DICK *v.* GILBERT CAMERON.

EJECTMENT for 400 acres of land on *Watfon's* run. This was for land weft of the *Allegheny* river, and the claim on both fides was, as actual fettlers, under the law of 3d *April*, 1792.

The evidence for the plaintiff was as follows.—*William Watfon*, a mill-wright, while engaged in building a faw-mill for *David Mead* at *Meadville*, in 1793, made an improvement, about five miles thence, cut down fome trees, deadened fome, and put his name on a tree, without intending to live there; and fold this improvement to *William Dick* for 3*l.* *Dick* came to *Meadville* in 1794, lived there, and followed his trade of a carpenter. In *June*, 1794, he built a cabbin, 16 by 14 feet, near *Watfon's* improvement, put the ribs on, but did not finifh it. It was common for the inhabitants of *Meadville* to go out in companies armed, and make improvements. They did not confine themfelves to one improvement for each. In 1795 the *Indians* killed two men, about five or fix miles from this improvement, and one man near the town.

*Brackenridge*, for the plaintiff, offered to prove a furvey made for *William Dick*.

*Woods* objected to this, until a warrant or an actual fettlement, were firft proved. 3 *St. L.* 211.

*Brackenridge.* What is an actual fettlement? It is inconvenient to fay, either that the firft act of labour fhould be fufficient, or that actual dwelling on the land fhould be required. We ought to take an intermediate ftate.

Z

The act of 1786 is to be underſtood as applicable only to the ſubject then in view, to protect ſettlements formed. In early times in this country, county courts protected improvements to a wild extent, even the marking of a name on a tree. When the judges of the Supreme court came out here, the chief-juſtice, a lawyer from *Delaware*, unacquainted with the land deciſions of *Pennſylvania*, and with any thing but paper titles, went to the contrary extreme, and excluded all evidence of improvement. Alarmed at this, in the aſſembly of 1786, I introduced the law protecting ſettlements. And ſince, even in caſes commenced before that law, the chief-juſtice and the judges of the Supreme court have changed their principles, and have declared that ſettlements give title, and that they would decree a warrant.

But the expreſſions in the law of 1792 are not to be controlled by the law of 1786, but to be explained by what the legiſlature of 1792 intended to accompliſh. Their intention was to give land to thoſe who ſhould expend labour on it. How was this to be done? The ſettler muſt firſt go and explore the country, then ſelect a ſpot, and ſet a mark on it, put his name on a tree.— This ought to be reſpected by every other, and be protected. He would next deaden the trees, and ſo proceed in a ſeries of acts, all which taken together, the jury, with chancery powers, will declare to be a ſettlement. And we muſt begin with the firſt act, and detail the progreſs till the ſettlement is accompliſhed. The ſurvey ought to be the firſt act. The man is on the ground. And he ought to have it in his power to require the ſurveyor to mark his boundaries, in order to keep off others.

*Woods.* Thoſe who take out warrants are actual ſettlers, as well as thoſe who begin by improvement; for they muſt make an actual ſettlement within two years. The improver begins by improvement and ſettlement, and muſt take out a warrant in ten years. The object of both is to effect actual ſettlements. The argument on the other ſide is calculated for the protection of *land-jobbing* improvements. The act requires the ſurveyor to ſurvey only for thoſe who have made actual ſettlements. No lands are protected againſt warrants, but ſuch as are actually ſettled.

*Brackenridge.* I agree with all that has been said, and offer the survey as proper evidence in part. But it will fail unless we can shew a settlement.

PRESIDENT. No doubt this may be proper evidence in part; but the proper order is to prove an actual settlement first, and, having done that, then to prove a survey. The question whether an actual settlement has been made, involves a point of law to be determined by the court. Whether the party has done certain acts, is a question of fact, which the jury must decide. Whether those acts amount to an actual settlement is a question of law which the court must decide.

It was then proved, that, in *June*, 1795, *Dick*, with other improvers assisting him, made between 300, and 400 rails, put them up in a fence, four rails high, inclosed about one-third of an acre, dug it with a hoe, planted corn, potatoes, and garden-seeds, and returned home to *Meadville.*

*Brackenridge* then proposed to prove, that, in *September*, 1795, *Dick* put another person on this land, as his agent, to improve for him.

*Woods* objected to such testimony. No person, who has not a warrant, can, under the act of 1792, derive a title from a settlement, unless it be made by himself. The grantee of a warrant may either make or *cause* to be made, the actual settlement required. The improver without warrant must *make* an actual settlement.

*Brackenridge.* The distinction is too ingenious, and favours more of the casuistry of the schools, than the sound deductions of reason. This could not be the meaning of the legislature. Law is founded on reason, and on various other grounds, one of which is principles or maxims. This is one of the noblest grounds of the law; and one maxim is *Qui facit per alium facit per se.* It must have been the intention of the legislature to provide for those who are not able to supply themselves with provisions, and might wish to engage as agents to others for money, or a part of the land. It is true the law has been abused, by the appropriation of many tracts by means of agents.

*Woods.* Those agents and their employers can be equally provided for, by supposing the title vested in the agent, under an agreement to convey to the employer.

1797.    PRESIDENT. The law of 1792 has it in view to accommodate two different defcriptions of perfons; thofe poffeffed of money, which they were defirous to employ in the purchafe of even more land than they could occupy themfelves; and thofe who, without money, were defirous to appropriate to themfelves a tract not exceeding 400 acres of land, as a refidence and fund of fubfiftence. This law, therefore, has two objects, to increafe the money in the ftate treafury, and to fettle the frontier lands. Whether thefe views of the legiflature be fo compatible, as to be effectually and beneficially purfued together, and which, when they clafh, ought to be favoured, fome may doubt.

However this may be, vaft quantities of land have been appropriated or claimed by individuals, by both methods. The claim by one man of any quantity, however great, by means of money, was plainly within the view of the legiflature, and is fanctioned by this law. The claim, by one man, of any quantity exceeding 400 acres, by means of labour, was not within the view of the legiflature; and having been made in a manner, and to an extent, amounting to an abufe of the law, we ought to lay hold of any words in the law to reftrain it within the bounds which the law meant, 400 acres.

We have, on former occafions, expreffed an opinion, from which we now fee no reafon to depart, that it will beft accomplifh the objects of the law, to fay, that no title fhall be derived from a fettlement, but to the perfon by whom the fettlement was made; and that the furvey ought to be made for the refident fettler, and not for the employer. The furveyor is to furvey for him who *has made* the fettlement. The grantee of a warrant is to make, or *caufe to be made*, the fettlement. As thefe words will juftify this conftruction, if this conftruction will beft effect the views of the legiflature, (and we think it will) the conftruction of the law ought to be limited by thefe words.——The law will then ftand thus. He who would appropriate land by means of labour, muft limit his claim to 400 acres; the labour muft be exerted by him or under his direction; he muft refide on this land, and make it the refidence of his family. If any man would appropriate to himfelf more than 400 acres, he muft begin with money, and take out a war-

rant. He who would appropriate land by money, may appropriate to himfelf any quantity whatever, for which he can purchafe warrants, and proceed to make or caufe to be made the fettlements required by law. Thus the rich are permitted to engrofs land, only by means of money, and an opportunity is left to the poor to provide a competence, by means of labour. But if the rich were permitted to engrofs both by money and by labour; the poor would be excluded from all means of procuring land.

But however this might incline us to confider the teftimony as improper, we will not fo far determine the point as to exclude it. We will therefore receive the teftimony, but under this condition, that, if there be a verdict for the plaintiff, the defendant fhall have leave to move to fet it afide on this ground, and to have judgment of nonfuit entered.

Evidence was then given, that, in *September*, 1795, *Dick* put one *Mufhrufh* in poffeffion of this land, that there were then lefs than an acre in corn and potatoes planted in the fpring before, and, though no cabbin was near this, there were three on this tract of land, two of which were underftood to have been built by *Dick*; that *Mufhrufh* and his fon went into one of them, but that his family was not in that part of the country; and that he cleared, and burned brufh; that in *March* or *April*, 1796, he was clearing, had about four acres cleared, and had timber cut for rails; that *Dick* then went to warn *Cameron* off; that *Cameron* was not then on the place, that he claims two or three other places, and has two fons, one grown up fit for a man's work, another not fo, and that his wife refides in *Meadville*; and that one *Jackfon* was then on the place.

*Brackenridge* then offered to prove, that *Dick* had made a furvey round this land.

*Woods* objected, becaufe no actual fettlement had been made.

President. If the furvey was made during the time that *Mufhrufh* was refident on the land, it may be given in evidence as an act of his or of *Dick*, circumfcribing the boundary of his fettlement then begun and profecuting.

1797.

A witnefs then fwore, that, in *April*, 1795, he run the clofing line of a furvey for *Dick*.

On the part of the defendant, it was proved, that, in *August*, 1793, he raifed a houfe on the land, that another cabbin was built on another place for his fon, a working lad; that the *Indians* were troublefome, and he left that part of the country, and went, to *Northumberland* county, where he had his family; that, in fpring 1794, he prepared to remove with his family, which, being large, he could not take over the mountains then, left them on the weft branch of the *Sufquehannah*; that he proceeded with his eldeft fon, lived in the cabbin, and worked on the land; that, in harveft, he returned, and brought up his family to *Pittfburgh*, where he faid he would leave them, till the *Indians* were fettled; that, in *May* or *June*, 1795, he with others planted an acre of corn and potatoes, digging the ground with their axes; that, before *Mufhrufh* came on the land, or into that part of the country, *Cameron* had put one *Jackfon* on it for him; and that *Jackfon* has continued to live on it ever fince. It was alfo proved, that *Mufhrufh* worked on another place, but refided generally near *Pittfburgh*; that among the company with whom *Dick* went in 1794 to make improvements, it was agreed to draw lots for the improvements; that *Dick* drew that near *Cameron's* cabbin; that they knew of *Cameron's* cabbin, and feveral other cabbins; that they declared, if thofe who had made the cabbins returned, they would give up their claims; and that *Dick* has another improvement, and lives with his family at *Meadville*.

PRESIDENT. It does not appear, that any one for *Dick* lived on this land, before *Mufhrufh*; and before him, *Jackfon* was placed on the land, and has continued to refide on it, in oppofition to *Dick*.

Verdict for the defendant.